**Lee HOLLAND, Jr., Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–728.

United States Court of Veterans Appeals.

May 23, 1994.

Keith D. Snyder, Washington, DC, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, HOLDAWAY, and IVERS, Judges.

IVERS, Judge, filed the opinion of the Court in which HOLDAWAY, Judge, joined. KRAMER, Judge, filed a separate opinion, concurring in the result.

IVERS, Judge:

Lee Holland, Jr., appeals a February 14, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating for service-connected rheumatoid arthritis of multiple joints (currently rated 40% disabling). *Lee Holland, Jr.*, BVA 92–03185

(Feb. 14, 1992). In that decision, the BVA also referred claims for service connection for skin cancer secondary to Agent Orange exposure and lung disease secondary to asbestos exposure as well as a claim for a total disability rating based on individual unemployability (TDIU rating) to the originating agency for further development and adjudication. Appellant has filed a motion to remand the case to the Board, and the Secretary has filed a motion to dismiss the instant appeal. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we will deny the Secretary's motion to dismiss, vacate the February 1992 decision of the BVA, and remand the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Navy from May 11, 1961, to August 23, 1966, from November 2, 1966, to February 25, 1975, and from July 15, 1986, to February 28, 1989. R. at 14; *see* R. at 159. On May 14, 1974, appellant was admitted to a Navy hospital with a four-month history of joint pain and swelling of both knees and the right wrist. R. at 15. The resultant report provided a clinical impression of rheumatoid arthritis, early sero-negative. R. at 16. On March 28, 1975, a VA regional office (RO) granted service connection for rheumatoid arthritis (40% disabling). R. at 25.

On June 21, 1989, appellant sought an increased rating for the condition. *See* R. at 37. Following a VA examination, on April 4, 1990, the rating for appellant's rheumatoid arthritis was reduced to 20% disabling. *Ibid.* On July 4, 1990, while pursuing his claim for an increase, appellant also indicated that he was seeking service connection for skin cancers due to exposure to Agent Orange in Vietnam and for a lung condition due to in-service asbestos exposure. R. at 44. In August 1990, after having received a Statement of the Case, appellant perfected his appeal by filing a VA Form 1–9 (Appeal to BVA), wherein he wrote:

I would now like to argue for a 100% rating as my record goes before the BVA. There is *not* a question of 3–4 exacer-

bations per year, here. What I have had, since June of 1989, is a constantly swollen knee as documented by Dr. Coletti in Dec., 1989 [and] Dr. Bogdanovich in May and July, 1990, and other periodic episodes of swelling and pain in my other joints, e.g., right wrist, neck, back, feet and hands, over this past year, as noted by Dr. Coletti and Dr. Bogdanovich, in their comments.

R. at 117. In August 1990, appellant also filed VA Form 21–8940, Compensation Based on Unemployability. R. at 119–20. In Box 7, in response to the question, "What service[-]connected disability prevents you from securing or following any substantially gainful occupation," he answered rheumatoid arthritis. R. at 119.

On October 5, 1990, the VA notified appellant that he should report for a VA examination on November 14, 1990, at a VA medical center. *See* R. at 122. Appellant, however, refused to be examined at any VA medical center, referring to televised reports concerning such medical centers. *Ibid.* Instead, appellant directed the RO to three previous examinations, a December 1989 VA examination by Dr. Coletti, a May 1990 VA examination by Dr. Bogdanovich, conducted in connection with appellant's Agent Orange claim, and an October 1990 examination by a private physician, Dr. R.A. Griffin. R. at 122–23. Appellant noted, however, that he would be willing to undergo a non-VA examination, at his own expense, by a non-VA physician selected by the VA if the three examinations were insufficient. R. at 123. The VA accepted Dr. Griffin's examination as sufficient for rating purposes. R. at 141; *see* R. at 137. Appellant also submitted a copy of a determination by the Social Security Administration (SSA) that he was disabled due to severe rheumatoid arthritis. R. at 149–54.

On July 10, 1991, the RO restored the 40% disability rating for appellant's service-connected rheumatoid arthritis. R. at 155–56. In addition, the RO denied appellant's claim for a TDIU rating but deferred action on the service connection claims for skin cancer secondary to Agent Orange exposure and lung disease secondary to asbestos exposure. R. at 156. On February 14, 1992, the BVA

denied a rating higher than 40% for appellant's rheumatoid arthritis. *Holland,* BVA 92–03185, at 8. The Board also referred appellant's skin cancer, lung disease, and TDIU rating claims to the agency of original jurisdiction (AOJ) for further adjudication. *Id.,* BVA 92–03185, at 2.

## II. ANALYSIS

### A. *Motion to Dismiss*

We must first decide whether appellant's service connection claim for rheumatoid arthritis is "inextricably intertwined" with any of the claims referred to the AOJ for further adjudication. If so, we would have to dismiss the instant appeal under the finality doctrine guarding against piecemeal litigation announced by the Court in *Harris v. Derwinski,* 1 Vet.App. 180, 182–83 (1991) (under 38 U.S.C. §§ 7252(a) and 7266(a), "a claimant seeking to appeal to the Court must have a *final* BVA decision."), and *Hoyer v. Derwinski,* 1 Vet.App. 208, 209–10 (1991) (same); *see Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984) (finality has historically been a condition of review by federal appeals courts).

Of the three claims referred by the Board in its February 1992 decision to the AOJ, only the TDIU rating claim might conceivably be related to the rheumatoid arthritis rating increase claim. *See Kellar v. Brown,* 6 Vet.App. 157, 160 (1994) (claim for increased rating of chronic lumbosacral strain was not "inextricably intertwined" with service connection claim for urinary incontinence because each condition was evaluated under different code and symptoms pertinent to evaluation of each condition under relevant code differed).

Initially, we note two cases that involved claims for an increased rating in a service-connected condition and claims for a TDIU rating. In *Begin v. Derwinski,* 3 Vet.App. 257, 258 (1992), the Court first remanded the claim for an increased rating and then remanded the TDIU rating claim as well. *Ibid.* In that case, the Court reasoned: "The appellant's claim for [a TDIU rating] is inextricably intertwined with the degree of impairment that is ultimately adjudicated."

*Ibid.* (citing 38 C.F.R. § 4.16 (1991)); *accord Babchak v. Principi,* 3 Vet.App. 466, 467 (1992).

The instant appeal, however, presents important distinctions that counsel against application of the finality doctrine. First, neither *Begin* nor *Babchak* involved the finality doctrine because both the rating increase and the TDIU rating claims were then on appeal to this Court. Therefore, the finality doctrine was not at issue in either of those cases.

■ Second, in *Begin* and *Babchak,* the Court initially remanded the BVA decisions regarding the rating increase claims and *then* remanded the TDIU rating claims on the grounds that the TDIU rating claims were inextricably intertwined. This sequence is important for what it does and does not say relative to the case at bar. Although a TDIU rating claim predicated on a particular service-connected condition is "inextricably intertwined" with a rating increase claim regarding the same condition, it does not necessarily follow that a rating increase claim for a particular service-connected condition is "inextricably intertwined" with a TDIU rating claim predicated on that condition.

We arrive at this conclusion by examining the inquiries undertaken by the VA regarding the degree of impairment and a TDIU rating. The Schedule for Rating Disabilities is comprised of ten grades of disability which "are based on the average impairment of a veteran's occupational earning capacity." *Swan v. Derwinski,* 1 Vet.App. 20, 22 (1990); *see* 38 C.F.R. § 4.1 (1993) ("ratings represent . . . the average impairment in earning capacity"); *see also Bierman v. Brown,* 6 Vet. App. 125, 129 (1994). Under this Schedule, a 100% rating means that a veteran is totally disabled. *Swan,* 1 Vet.App. at 22.

However, 38 C.F.R. § 4.16(a) and (c) (1993) "provide total disability compensation where a person who fails to meet the schedular rating percentage is, nevertheless, unable to secure 'a substantially gainful occupation.' " *Swan,* 1 Vet.App. at 22 (quoting 38 C.F.R. § 4.16(a)). As the Secretary has recognized in his regulations,

> The ability to overcome the handicap of disability varies widely among individuals.

The rating, however, is based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. However, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effect of combinations of disability. Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. . . .

38 C.F.R. § 4.15 (1993). Therefore, the Schedule for Rating Disabilities and the structure for evaluating a TDIU rating claim complement each other.

The regulation governing TDIU ratings, however, underscores the fact that, while complementing each other, the Schedule and the TDIU rating scheme involve different considerations: "Total disability ratings may be assigned, *where the schedular rating is less than total,* when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities," provided that certain percentage requirements are met. 38 C.F.R. § 4.16(a) (emphasis added). A veteran with service-connected disabilities that do not meet the percentage requirements detailed in subsection (a), however, may still seek extra-schedular consideration of a TDIU rating. 38 C.F.R. § 4.16(b) (1993).

■ In sum, a veteran may seek a rating under the Schedule, provided that his condition manifests the symptoms listed in the appropriate diagnostic code and relevant rating, or a veteran may seek a total disability rating, provided that the condition renders it impossible to secure or follow a substantially gainful occupation. Therefore, the regulations recognize that the Schedule for Rating Disabilities may be inadequate for assessing whether a particular veteran is totally dis-

abled. An additional regulation, 38 C.F.R. § 3.340(a)(2) (1993), recognizes the two alternate methods—i.e., the Schedule for Rating Disabilities and § 4.16—for assigning a total disability rating. Given these alternate methods and their respective inquiries, it cannot be said that an increased rating claim is so inextricably intertwined with a TDIU rating claim as to warrant dismissal of the former claim when the latter claim is still being adjudicated by the VA.

The Court's jurisprudence does not dictate a different result. Indeed, in a recent case, the Court held that a veteran's claim for extra-schedular consideration of a service-connected condition, which was on appeal to this Court, was not inextricably intertwined with a TDIU rating claim that had been referred to the AOJ. *Kellar,* 6 Vet.App. at 162. In arriving at that conclusion, the *Kellar* Court held that the extra-schedular inquiry under 38 C.F.R. § 3.321(b)(1) (1993) ("marked interference with employment") differed from the inquiry under the TDIU rating regulation, 38 C.F.R. § 4.16 ("unable to secure and follow a substantially gainful occupation").

In *Hoyer,* 1 Vet.App. at 209, the Court explained the rationale guiding the finality doctrine announced in *Harris:* "The [*Harris* ] Court was influenced by the potential impact which a[n] RO or BVA decision to grant appellant's referred claim could have *on the decided claim which was being appealed.*" (Emphasis added.) Under this rationale, the Court looks to whether the claim referred to the AOJ could affect the claim on appeal.

■ In this case, the Board referred the TDIU rating claim to the AOJ for further adjudication. It was not inappropriate for the Board to do so. *See Bernard v. Brown,* 4 Vet.App. 384, 394 (1993). Nevertheless, while the TDIU rating claim is still being adjudicated, the increased rating claim is properly before the Court at this time. While the claim referred to the AOJ may not necessarily affect the claim on appeal, the claim on appeal may affect the claim referred to the AOJ. Thus, the claim currently on appeal, i.e., a claim for an increased rating for service-connected rheumatoid arthritis, is

a final claim, and the Court will deny the Secretary's motion to dismiss.

### B. *Reasons or Bases*

■ Appellant's claim for an increased rating is a new claim, and the Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Butts v. Brown,* 5 Vet.App. 532, 535 (1993) (en banc); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet. App. at 57.

■ In this case, the Board did not give adequate reasons or bases for all the evidence of record. In particular, an SSA disability determination stated: "The medical evidence establishes that the claimant has *severe* rheumatoid arthritis...." R. at 151 (emphasis added). The relevant diagnostic code (DC) for active rheumatoid arthritis provides a 60% disability rating where the condition involves "weight loss and anemia productive of severe impairment of health or severely incapacitating exacerbations occurring 4 or more times a year or a lesser number over prolonged periods." 38 C.F.R. § 4.71a, DC 5002 (1993). It appears that, in arriving at its determination, the SSA considered the same medical evidence considered

by the BVA. *See* R. at 153–54. In its February 1992 decision, the Board considered a 1990 SSA disability determination but stated:

We have considered the conclusions of the [SSA], but in our opinion, symptoms of rheumatoid arthritis which are confirmed by examination findings do not result in more than definite impairment of health, if that, and, as has been stated, recent incapacitating exacerbations are not reflected in the clinical record. We do not consider the fact that the appellant walks with a cane because of knee complaints to be equivalent to incapacitation.

*Holland,* BVA 92–03185, at 8. This Court has noted that the SSA's disability determinations are not binding on the VA because, while there are significant similarities, there are significant differences between the two disability determination schemes. *Collier v. Derwinski,* 1 Vet.App. 413, 417 (1991). Nevertheless, the SSA's determination is evidence "and to the extent its conclusions are not accepted, reasons or bases should be given therefor." *Ibid.* Consequently, the Board should have provided reasons or bases why evidence that the SSA considered indicative of severe impairment could be construed as warranting definite impairment.

### C. *Duty to Assist*

#### 1. *Medical Records*

Appellant also argues that the Board did not seek to obtain certain medical records. In particular, appellant argues that the Board *appears* not to have sought to obtain the complete records associated with appellant's SSA disability determination (R. at 153–54), an award for total disability received under the Agent Orange Veteran Payment Program (R. at 163), and his placement on the Temporary Disability Retired List (R. at 127, 169).

■ Once a claimant has submitted "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the Board has a duty to assist him in developing the facts pertinent to his claim. 38 U.S.C. § 5107(a); *see* 38 C.F.R. § 3.103(a) (1993); *Murphy v. Derwinski,* 1

Vet.App. 78, 81 (1990). This duty is a continuing obligation throughout the administrative adjudication. *See Murincsak v. Derwinski,* 2 Vet.App. 363, 373 (1992); *see also* 38 C.F.R. § 3.159 (1993); *cf.* 38 C.F.R. § 3.156(b) (1993).

When the VA is put on notice prior to the issuance of a final decision of the possible existence of certain records and their relevance, the BVA must seek to obtain those records before proceeding with the appeal. . . . *The duty to assist the veteran does not end with the rating decision of the VARO, but continues while the claim is pending before the BVA.* There is a continuing obligation upon the VA to assist the veteran in developing the facts of his claim throughout the entire administrative adjudication.

*Murincsak,* 2 Vet.App. at 373 (emphasis added).

In this case, as appellant concedes, it is not clear from the record on appeal whether the Board sought to obtain any of the records discussed above. Since the case is being remanded to the Board for further adjudication, however, "appellant will be free to submit additional evidence and argument on the question at issue, and the Board will 'seek any other evidence it feels is necessary' to the timely resolution of this claim." *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992) (quoting *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)).

#### 2. *Medical Examination*

■ Finally, we note that the VA has fulfilled the duty to assist regarding providing for the conduct of an examination. *See* 38 U.S.C. § 5107(a); *Ardison v. Brown,* 6 Vet.App. 405, 407 (1994); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991). The VA scheduled appellant for an examination, but appellant refused to be examined at a VA medical center by a VA physician. Appellant, however, was willing to submit to an examination by a non-VA physician, and he submitted private medical records, which the VA found sufficient for rating purposes. R. at 123, 141.

■ In its February 1992 decision, the Board found this evidence to be inadequate.

*Holland,* BVA 92–03185, at 4. In particular, the Board noted that the record was insufficiently developed so as to rate the limitation of joint motion or to evaluate appellant's rheumatoid arthritis as an active process or as a chronic residual. *Ibid.* The Court in this instance finds appellant's reasons for refusing to submit to the conduct of a VA examination inadequate and cautions appellant that, as the Board noted in its decision, "[t]he duty to assist is not always a one-way street." *Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991). Furthermore, VA regulations require that a claimant seeking an increased disability rating "for whom examinations have been authorized and scheduled ... to report for such examinations." 38 C.F.R. § 3.326(a) (1993). Nevertheless, since the matter is being remanded to the Board for readjudication and since appellant will be free to produce additional evidence, appellant has an opportunity to cure the deficiencies in the record by producing evidence addressing the salient points in the Board's decision. *See also Olson v. Principi,* 3 Vet.App. 480, 483 (1992) (Court noted that if appellant were to seek to reopen claim with new and material evidence, he would be required to cooperate with VA's efforts to provide adequate medical examination).

## III. CONCLUSION

Accordingly, upon consideration of the record, the Secretary's motion to dismiss, and appellant's brief, we deny the Secretary's motion, VACATE the February 1992 decision of the BVA, and REMAND the case for readjudication consistent with this opinion.

KRAMER, *Judge,* concurring:

I write separately to express my view that appellant's claim for an increased rating for service-connected rheumatoid arthritis of multiple joints which was adjudicated by the BVA and the claim for a total disability rating based on individual unemployability (TDIU) which was remanded by the BVA are inextricably intertwined. As the majority acknowledges, *ante* at 446, both a schedular rating and a TDIU rating are based on the extent to which a disability negatively impacts upon employability. *See* 38 C.F.R. § 4.1 (1993) (schedular "ratings represent ... the average impairment in earning capacity"); 38 C.F.R. §§ 4.15, 4.16 (1993) (TDIU ratings represent the inability "to follow a substantially gainful occupation"). A TDIU rating which is premised upon a condition which is also the subject of a rating in terms of percentage of disability is inextricably intertwined with the percentage rating. The evidence used to support both ratings must overlap, at least in part, because the inquiry is the same: what is the degree of disability?

Under the finality doctrine announced by the Court in *Harris v. Derwinski,* 1 Vet.App. 180, 182–83 (1991), and construed in subsequent decisions, *see, e.g., Kellar v. Brown,* 6 Vet.App. 157, 160 (1994); *Clark v. Derwinski,* 2 Vet.App. 166, 167 (1992); *Hoyer v. Derwinski,* 1 Vet.App. 208, 210 (1991), a finding that claims are inextricably intertwined mandates dismissal of the appeal. However, while I support the doctrine which "guard[s] against piecemeal litigation," *ante* at 445, I do not support the remedy of dismissing the appeal. This result unfairly punishes an appellant who is proceeding piecemeal not from choice, but because the BVA chose to bifurcate inextricably intertwined claims.

While under *Harris, supra,* we may not have jurisdiction to review a decision on the merits which represents reviewing less than all inextricably intertwined claims, we do, in my view, have jurisdiction to state that it was error for the BVA to issue a decision on one inextricably intertwined claim, while it remanded another to a regional office (RO). Accordingly, the better result is to vacate and remand the BVA decision as to the claim appealed to the Court for readjudication with the claim already remanded by the BVA to the RO. I concur in the majority's vacating and remanding of the BVA decision.