﻿Citation Nr: AXXXXXXXX
Decision Date: 12/27/18 Archive Date: 12/26/18

DOCKET NO. 180825-119
DATE: December 27, 2018
ORDER
Entitlement to a rating in excess of 60 percent for coronary artery disease is denied.
Prior to May 19, 2016, entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities is granted.
Beginning May 19, 2016, entitlement to TDIU is dismissed.
REMANDED
Entitlement to service connection for hypertension is remanded.
FINDINGS OF FACT
1. The Veteran’s coronary artery disease did not result in chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent.
2. Resolving reasonable doubt in the Veteran’s favor, his service-connected disabilities prevented him from securing or following a substantially gainful occupation prior to May 19, 2016.
3. Beginning May 19, 2016, the Veteran had a combined schedular 100 percent rating.
CONCLUSIONS OF LAW
1. The criteria for a disability rating in excess of 60 percent for coronary artery disease are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.104, Diagnostic Code 7005 (2018).
2. Prior to May 19, 2016, the criteria for entitlement to TDIU are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2018).
3. Beginning May 19, 2016, The Veteran’s claim for entitlement to a TDIU is moot. Vettese v. Brown, 7 Vet. App. 31 (1994); Holland v. Brown, 6 Vet. App. 443 (1994).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.
The Veteran served on active duty from July 1969 to January 1972 in the United States Army. The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed that RAMP rating decision to the Board and requested 90 days to submit additional evidence. In September 2018, the Veteran’s attorney submitted additional argument and evidence, which has been reviewed and considered by the Board.
In the August 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for hypertension. The Board is bound by that favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.
The Veteran also appealed the issue of entitlement to service connection for obstructive sleep apnea. In a November 2018 rating decision, the AOJ granted service connection for obstructive sleep apnea, which constitutes a full award of the benefits sought on appeal. See Grantham v. Brown, 114 F. 3d 1156, 1158 (Fed. Cir. 1997). Thus, that matter is no longer in appellate status. 
1. Entitlement to a disability rating in excess of 60 percent for coronary artery disease from July 22, 2014, to August 6, 2018
The issue of an increased rating for coronary artery disease arose from the Veteran’s claim for TDIU that was filed on July 22, 2014. In the August 2018 RAMP decision currently on appeal, the AOJ continued a 60 percent rating for coronary artery disease. The Veteran appealed and is seeking a higher rating.
In this case, the evidence does not indicate that the Veteran had chronic congestive heart failure. A December 2014 Disability Benefits Questionnaire indicated that he did not have chronic congestive heart failure or congestive heart failure within the prior year. An October 2017 VA outpatient treatment record also indicated that there were no clinical signs of congestive heart failure.
The evidence also does not indicate that a workload of 3 METs or less resulted in dyspnea, fatigue, angina, dizziness, or syncope. A December 2014 Disability Benefits Questionnaire indicated that more than 5 to 7 METs resulted in fatigue. An August 2017 VA outpatient treatment record noted that his functional status was greater than 4 METs. 
In addition, the evidence does not indicate that left ventricular ejection fraction was less than 30 percent. A December 2014 Disability Benefits Questionnaire noted that left ventricular ejection fraction was 41 percent based on a March 2014 echocardiogram. 
Based on the foregoing, the Board finds that the Veteran’s service-connected coronary artery disease does not more closely approximate the criteria for a 100 percent rating. Therefore, a rating in excess of 60 percent is not warranted. 38 C.F.R. § 4.104, Diagnostic Code 7005. 
2. Entitlement to a TDIU from July 22, 2014, to August 6, 2018 
TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. Id. 
Individual unemployability must be determined without regard to any nonservice-connected disabilities or a veteran’s advancing age. 38 C.F.R. §§ 3.341(a), 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough to show unemployability. A high rating in itself is recognition that the impairment makes it difficult to secure or follow employment, but the ultimate question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. 
Thus, the Board must evaluate whether there are circumstances in a veteran’s case, apart from any non-service-connected conditions and advancing age, which would justify a TDIU rating. 38 C.F.R. §§ 3.341(a), 4.16, 4.19. See Van Hoose, 4 Vet. App. at 363. A veteran’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b). 
The Board notes that beginning May 19, 2016, the Veteran had a combined 100 percent rating. The United States Court of Appeals for Veterans Claims (Court) has recognized that a 100 percent rating under the Schedule for Rating Disabilities means that a Veteran is totally disabled. Holland v. Brown, 6 Vet. App. 443, 446 (1994), citing Swan v. Derwinski, 1 Vet. App. 20, 22 (1990). Generally, if VA has found a veteran to be totally disabled as a result of a particular service-connected disability or a combination of disabilities pursuant to the rating schedule, there is no need, and no authority to otherwise rate that Veteran totally disabled on any other basis. Herlehy v. Principi, 15 Vet. App. 33, 35 (2001). 
However, a 100 percent disability rating does not always render the issue of TDIU moot. Specifically, special monthly compensation (SMC) may be warranted if the Veteran has a 100 percent disability rating for a single disability other than the disability that is rated on 100 percent. Bradley v. Peake, 22 Vet. App. 280 (2008). In this case, the Veteran has not alleged and the evidence does not show that one of his service-connected disabilities alone rendered him unemployable. Therefore, the findings in Bradley are not applicable in this case, and the issue of entitlement to TDIU is moot beginning May 19, 2016.
Prior to May 19, 2016, the Veteran satisfied the threshold minimum percentage rating requirements of 38 C.F.R. § 4.16(a) for TDIU. Therefore, the remaining question is whether his service-connected disabilities precluded him from securing and following substantially gainful employment.
The evidence indicates that the Veteran completed high school and two years of college. He worked as a computer technician at the same company from May 2004 until he resigned in May 2013. Records from the Social Security Administration (SSA) indicated that he stated that he drove eight hours a day to different customer locations where he would fix computers, printers, and software. He stated that he drove approximately 60,000 miles a year.
The Veteran’s SSA records indicated that he was determined disabled effective May 21, 2013, due to a primary diagnosis of heart failure and a secondary diagnosis of anxiety related disorders. A July 2013 evaluation report indicated that the Veteran’s “functional weakness from a psychological standpoint was significantly reduced efficiency and performance quality on routine daily tasks due to depressive and chronic traumatic stress features.” 
In the December 2014 Disability Benefits Questionnaire for ischemic heart disease, the physician noted that the Veteran had ischemic cardiomyopathy with an ejection fraction of 40 to 45 percent which can contribute to fatigue and shortness of breath, which could impact his ability to complete a full eight-hour day. 
In a November 2016 letter, the Veteran’s former employer indicated that in the later years of his employment, his capacity to accomplish tasks and keep up with increasing workloads diminished. He stated that it became increasingly difficult for the Veteran to handle the long hours and the physical activity that was necessary to complete the work that the was previously able to do.
In a January 2018 letter, Dr. R.R., a VA physician, opined that due to combined medical diagnoses, the Veteran was permanently unemployable.
Based on the foregoing, the Board finds that the evidence is at least in equipoise as to whether the Veteran’s service-connected disabilities, to include coronary artery disease and depressive disorder, precluded him from securing and following substantially gainful employment. The Board therefore concludes that, with the benefit of the doubt resolved in the Veteran’s favor, a grant of entitlement to TDIU is warranted prior to May 19, 2016. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).
REASONS FOR REMAND
The issue of entitlement to service connection for hypertension is remanded to correct a duty to assist error that occurred prior to the August 2018 rating decision on appeal. In this case, the Veteran served in the Republic of Vietnam during the Vietnam era. Therefore, it is presumed that he was exposed to herbicide agents, including Agent Orange. Although hypertension is not on the list of diseases that VA has associated with Agent Orange exposure, the National Academy of Sciences’ (NAS) has concluded that there is sufficient evidence of an association between exposure to Agent Orange and hypertension. 
The AOJ did not obtain a VA examination prior to the August 2018 rating decision on appeal. However, based on the foregoing, the Board finds that a VA examination/medical opinion is required to determine whether hypertension is related to his military service, including exposure to Agent Orange. In addition, because the AOJ also considered service connection for hypertension on a secondary basis, the Board finds that the VA examination should also address that issue.
The matter is REMANDED for the following action:
1. Schedule the Veteran for a VA examination by an examiner with appropriate expertise to determine the nature and etiology of any hypertension that may be present. The claims file must be made available to, and reviewed by the examiner. Any indicated studies should be performed. 
Based on the examination results and a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present hypertension is etiologically related to the Veteran’s active service, to include in-service exposure to Agent Orange. The examiner must also address the NAS conclusion that there is sufficient evidence of an association between exposure to Agent Orange and hypertension.
The examiner should also provide an opinion as to whether it is at least as likely as not (50 percent probability or better) that any currently present hypertension was caused or chronically worsened by any of the Veteran’s service-connected disabilities. 
A rationale for all opinions expressed must be provided.
2. Confirm that the VA examination report and all opinions provided comport with this remand. Then, readjudicate the claim of entitlement to service connection for hypertension. 

 
Kristin Haddock
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD S. Mishalanie, Counsel