﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/26/19

DOCKET NO. 190710-11801
DATE: August 27, 2019

ORDER

Entitlement to an initial disability rating of 100 percent for posttraumatic stress disorder (PTSD) from September 27, 2012 to September 3, 2014 is granted.

Entitlement to an initial disability rating of 100 percent for PTSD from September 4, 2014 to January 27, 2019 is granted.

Entitlement to an initial increased rating greater than 50 percent for obstructive sleep apnea (OSA) is denied.

Entitlement to an effective date earlier than September 4, 2014 for the award of service connection for OSA is denied.

Entitlement to a total disability rating based on individual unemployability (TDIU) prior to September 4, 2014 based on a single disability other than PTSD is denied.

Entitlement to special monthly compensation (SMC) at the (s) rate from September 4, 2014 to January 27, 2019 is granted.

Entitlement to SMC at the (s) rate prior to September 4, 2014 is denied.

Basic eligibility to Dependents’ Educational Assistance (DEA) under 38 U.S.C. chapter 35 from September 27, 2012 to January 27, 2019 is granted.

FINDINGS OF FACT

1. From September 27, 2012 to September 3, 2014, the Veteran’s PTSD was manifested by symptoms resulting in total occupational and social impairment.

2. From September 4, 2014 to January 27, 2019, the Veteran’s PTSD was manifested by symptoms resulting in total occupational and social impairment.

3. The Veteran’s OSA has not resulted in chronic respiratory failure with carbon dioxide retention or cor pulmonale, or a required tracheostomy.

4. The Veteran initially filed a service connection claim for OSA on September 4, 2014, and service connection was awarded in the decision on appeal from September 4, 2014, the date of claim.

5. Prior to September 4, 2014, a single, service-connected disability, to exclude PTSD, did not render the Veteran unable to obtain or retain substantially gainful employment.

6. Based on the Board’s increased rating for PTSD to 100 percent from September 27, 2012 to January 27, 2019, the Veteran had a single, service-connected disability rated at 100 percent plus additional service-connected disabilities having a combined rating of at least 60 percent from September 4, 2014 to January 27, 2019.

7. Based on the Board’s increased rating for PTSD to 100 percent from September 27, 2012 to January 27, 2019, the Veteran is permanently and total disabled from September 27, 2012 to January 27, 2019.

CONCLUSIONS OF LAW

1. The criteria for an initial disability rating of 100 percent for PTSD from September 27, 2012 to September 3, 2014 have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

2. The criteria for an initial disability rating of 100 percent for PTSD from September 4, 2014 to January 27, 2019 have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

3. The criteria for an initial disability rating greater than 50 percent for OSA have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.97, Diagnostic Code 6847.

4. The criteria for an effective date earlier than September 4, 2014 for entitlement to service connection for OSA have not been met. 38 U.S.C. § 5107, 5110; 38 C.F.R. §§ 3.102, 3.159, 3.400.

5. The criteria for entitlement to TDIU prior to September 4, 2014 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16.

6. The criteria for SMC at the housebound rate from September 4, 2014 to January 27, 2019 have been met. 38 U.S.C. §§ 1114(s), 5107(b); 38 C.F.R. §§ 3.102, 3.350(i).

7. The criteria for SMC at the housebound rate prior to September 4, 2014 have not been met. 38 U.S.C. §§ 1114(s), 5107(b); 38 C.F.R. §§ 3.102, 3.350(i).

8. The criteria for basic eligibility to DEA under 38 U.S.C. chapter 35 from September 27, 2012 to January 27, 2019 have been met. 38 U.S.C. §§ 3501, 3510; 38 C.F.R. §§ 3.807, 21.3020, 21.3021.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1963 to January 1967.

The Board notes that the rating decision on appeal was issued in March 2019. In June 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

Specifically, the Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. However, in conducting a Higher-Level Review, the Agency of Original Jurisdiction (AOJ) discovered an error in VA’s duty to assist; as a result, the AOJ completed additional development and conducted a “Supplemental Claim Review.” See March 2019 AMA rating decision.

Accordingly, the March 2019 AMA rating decision considered the evidence of record as of March 2019. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the AOJ.

In the March 2019 AMA rating decision, the AOJ: (1) increased the Veteran’s disability rating for PTSD from 50 to 100 percent effective January 28, 2019; (2) granted service connection for OSA and assigned a 50 percent rating from September 4, 2014; (3) granted SMC based on housebound criteria from January 28, 2019; and (4) established basic eligibility to DEA under 38 U.S.C. chapter 35 from January 28, 2019. The Veteran appealed “all issues listed in the RAMP Decision dated March 11, 2019 and all issues which are raised by the record.” See April 2019 Appeal to the Board.

Pursuant to the Order above, the Veteran is entitled to a 100 percent disability rating throughout the appeal period for PTSD and SMC at the housebound rate from September 4, 2014 to January 27, 2019. Hence, the Veteran’s benefits have been maximized from September 4, 2014, rendering further evaluation of entitlement to TDIU during that period moot. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); Bradley v. Peake, 22 Vet. App. 280, 294 (2008). Nevertheless, entitlement to TDIU based on a single disability other than PTSD prior to September 4, 2014 remains on appeal.

Increased Rating

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1.

When considering the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection is required. See Fenderson v. West, 12 Vet. App. 199, 125-26 (1999). The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” whether it is an initial rating case or not. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Importantly, the evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998); 38 C.F.R. § 3.102.

1. PTSD

For the reasons explained below, the Board finds the increased rating appeal period for PTSD runs from September 27, 2012 to January 27, 2019.

In an August 2013 rating decision, the AOJ granted service connection for PTSD and assigned a 30 percent rating effective September 27, 2012, which is the date VA received his original service connection for PTSD claim. The Veteran expressed written disagreement with the rating assigned in a September 2013 statement. See September 2013 VA Form 21-4138.

In March 2014, the AOJ continued the Veteran’s assigned 30 percent rating. See March 2014 rating decision. Within a year of the March 2014 rating decision, the Veteran obtained a December 2014 VA examination to evaluate his PTSD; the examination report contained new and material evidence as to the severity of his PTSD through that date. As a result, the AOJ granted an increased rating of 50 percent for PTSD effective September 4, 2014. See January 2015 rating decision. Within a year of that rating decision becoming final, the Veteran submitted a formal notice of disagreement (NOD) as to the increased rating for PTSD.

Accordingly, the Board finds that the August 2013 rating decision granting service connection for PTSD and assigning a 30 percent rating effective September 27, 2012 did not become final because the Veteran submitted a valid NOD within a year of the rating decision. The March 2014 rating decision did not become final because the Veteran submitted new and material evidence within a year of such rating decision. Further, the Veteran halted finality by submitted a formal NOD to the January 2015 rating decision. Thus, the appeal period for the Veteran’s initial increased rating for PTSD claim begins from September 27, 2012.

In the March 2019 AMA rating decision discussed above, the AOJ increased the Veteran’s rating for PTSD from 50 to 100 percent effective January 28, 2019. As a result, the appeal period for an initial increased rating for PTSD runs from September 27, 2012 to January 27, 2019.

Here, the Veteran contends that his PTSD is more severe than his assigned disability rating from September 27, 2012.

The Veteran’s PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. The rating criteria provide that a 30 percent evaluation is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships. Id.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment but shall not assign an evaluation solely based on social impairment. 38 C.F.R. § 4.126. 

Based on the evidentiary record, the Board finds the Veteran’s psychiatric symptoms more closely resemble total occupational and social impairment throughout the appeal period.

The Board notes that in December 2014, a VA examiner found the Veteran experienced the following symptoms: (1) depressed mood; (2) anxiety; (3) suspiciousness; (4) panic attacks that occur weekly or less often; (5) chronic sleep impairment; (6) mild memory loss; (7) flattened affect; (8) disturbances of motivation and mood; (9) difficulty in establishing and maintaining effective work and social relationships; (10) suicidal ideation; (11) impaired impulse control; and (12) intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. See December 2014 VA examination report.

Over four years later, in addition to those symptoms, the Veteran suffered from the following: (1) near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; (2) inability to establish and maintain effective relationships; and (3) disorientation to time and place. See January 2019 VA examination report.

However, these symptoms did not spring into existence in January 2019. Rather, a private psychiatrist, based on his training, experience, extensive review of evidentiary record, and personal interview with the Veteran, found it was at least as likely as not that the Veteran’s PTSD caused total and social impairment throughout the appeal period. See June 2018 Dr. M.C. medical opinion.

As to occupational impairment, the Veteran’s “disease progressed to the point where he was forced to leave work early due to the severity of his mental illness consistent with escalating PTSD symptomatology.” Id. Moreover, the Veteran was experiencing periods of dissociation at work and overlaid the emotional content of combat onto his workplace; this prevented him from being able to maintain employment, and his job came to an end because he could no longer get along with his supervisors.

As to social impairment, Dr. M.C. found the Veteran was totally impaired socially because he “does nothing and has no friends. He interacts with no individuals except attending group psychotherapy. . . . He has no hobbies, no interests, and does nothing for pleasure. He is becoming more and more estranged from his wife who is the only connection he has to the outside world.” Id. Importantly, and fundamental to this case, Dr. M.C. also found that “were it not for [the Veteran’s] wife, he would likely require institutionalization or removal to a long-term care facility for those with pervasive mental illness.” Id. This was also evident in other treatment records; specifically, a VA examiner found the Veteran was “alienated from his only sibling and is becoming increasingly alienated from his wife.” See December 2014 VA examination report.

Accordingly, the Board finds the Veteran’s psychological symptoms were frequent, long, and severe enough to more closely approximate total occupational and social impairment. As a result, the evidence is at least in equipoise and the Board finds that the criteria for an initial disability rating of 100 percent from September 27, 2012 to January 27, 2019 have been met.

2. OSA

The Veteran has asserted that he is entitled to an initial rating greater than 50 percent for OSA but has made no specific contentions to support his claim.

The Veteran’s OSA is rated under Diagnostic Code 6847. Under Diagnostic Code 6847, OSA requiring use of a breathing assistance device such as a continuous airway pressure (CPAP) machine warrants a 50 percent rating. OSA with chronic respiratory failure with carbon dioxide retention or cor pulmonale, or requiring a tracheostomy, warrants a 100 percent rating. 38 C.F.R. § 4.97, Diagnostic Code 6847.

Having reviewed the evidence of record, the Board finds that there is no indication that the Veteran’s OSA has resulted in chronic respiratory failure with carbon dioxide retention or cor pulmonale, or has required a tracheostomy, or any other symptoms of a similar type, degree, or effect. Thus, an initial rating greater than 50 percent is not warranted.

Effective Date

Except as otherwise provided, the effective date of an evaluation and award of compensation based on a claim for service connection or increase will be on the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(o)(1).

The Veteran seeks an effective date earlier than September 4, 2014 for the award of service connection for OSA. Here, a review of the claim file shows that the Veteran did not file a formal or informal application for service connection for OSA prior to the claim received on September 4, 2014. As such, the AOJ has assigned the earliest possible effective date provided by law and an earlier effective date is not warranted.

TDIU prior to September 4, 2014

The Veteran is rated at a schedular 100 percent combined prior to September 4, 2014. The Court has recognized that a 100 percent rating under the rating schedule indicates that a Veteran is totally disabled. Holland v. Brown, 6 Vet. App. 443, 446 (1994). Thus, if VA has found a Veteran to be totally disabled because of a service-connected disability or combination of disabilities pursuant to the rating schedule, there is no need, and no authority, to otherwise rate that Veteran totally disabled on any other basis. See Herlehy v. Principi, 15 Vet. App. 33, 35 (2001).

However, a grant of a 100 percent disability rating does not always render the issue of TDIU moot. VA’s duty to maximize a claimant’s benefits includes consideration of whether his or her disabilities establish entitlement to SMC under 38 U.S.C. § 1114. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); Bradley v. Peake, 22 Vet. App. 280, 294 (2008). Specifically, SMC may be warranted if a Veteran has a 100 percent disability rating for a “single disability,” and TDIU for a sole disability may satisfy this requirement. See Bradley, 22 Vet. App. at 292 (analyzing 38 U.S.C. § 1114(s)).

In this case, the Veteran is rated at a schedular 100 percent for his PTSD prior to September 4, 2014. In contrast, the evidence does not show, nor does the Veteran argue, that either his service-connected bilateral hearing loss or tinnitus alone renders him unable to obtain or maintain substantially gainful employment. As a result, entitlement to TDIU based on a single, service-connected disability other than PTSD prior to September 4, 2014 is denied.

SMC

SMC at the housebound rate is payable where a veteran has a single service-connected disability rated as 100 percent and: (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems, or (2) is permanently housebound by reason of service-connected disability or disabilities. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i).

Pursuant to the Order above, the Board has awarded a 100 percent rating for PTSD from September 27, 2012 to January 27, 2019, and the Veteran had additional service-connected disabilities independently ratable at a combined rating of more than 60 percent from September 4, 2014. Accordingly, as both elements of entitlement to SMC at the (s) rate have been shown, the Board finds entitlement to SMC at the statutory housebound (s) rate is granted from September 4, 2014 to January 27, 2019.

Prior to September 4, 2014, excluding PTSD, the Veteran was assigned a 10 percent rating for tinnitus and a non-compensable rating for bilateral hearing loss. These ratings combine to less than 60 percent. Further, the Veteran does not argue, nor does the evidence show, that he would be entitled to a total rating based on a single disability other than his service-connected PTSD prior to September 4, 2014. As a result, entitlement to SMC at the statutory housebound (s) rate is denied prior to September 4, 2014.

DEA from September 27, 2012 to January 27, 2019

Because the Board has determined that the Veteran’s service-connected PTSD renders him permanently and total disabled from September 27, 2012 to January 27, 2019, basic eligibility to DEA is warranted. 38 U.S.C. Ch. 35; 38 C.F.R. § 3.807.

 

 

DONNIE R. HACHEY

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Salazar, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.