# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-2575

FELIX PAUL PHILLIPS, APPELLANT,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 10, 2024                              Decided July 30, 2024)

*Amy F. Odom*, of Providence, Rhode Island, with whom *Virginia Girard-Brady* and *Jamie M. Atwood*, both of Lawrence, Kansas, were on the brief for the appellant.

*Ronen Z. Morris*, with whom *Richard J. Hipolit*, Deputy General Counsel for Veterans Programs, Performing the Delegable Duties of the General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Jonathan G. Scruggs*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

FALVEY, *Judge*, filed the opinion of the Court. BARTLEY, *Chief Judge*, filed a dissenting opinion.

FALVEY, *Judge*: Army veteran Felix Paul Phillips, through counsel, appeals an April 1, 2022, Board of Veterans' Appeals decision that denied entitlement to a total disability rating based on individual unemployability (TDIU) before April 7, 2020. Record (R.) at 5-13.[1] In March 2023, we set aside and remanded the April 2020 Board decision in a single-judge memorandum decision. The next month, the Secretary asked us to reconsider that decision or to have the case considered by a panel of this Court. We granted the Secretary's request for panel review to address how this Court's existing precedent about TDIU—chiefly *Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009)—interacts with the claims system in our new Veterans Appeals Improvement and Modernization

---

[1] The Board's assignment of TDIU back to April 2020 is a favorable determination that we do not disturb; that is, we only consider whether the Board erred in denying TDIU before that date. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009). The Board also denied a 100% schedular rating for PTSD before April 2021. Mr. Phillips has not challenged this part of the Board decision. Thus, we will not address it. *See Pederson v. McDonald*, 27 Vet.App. 276, 284-85 n.3 (2015) (en banc).

Act (AMA) world. *See Andrews v. McDonough*, 34 Vet.App. 151, 156-57 (2021) (summarizing the "whole new world" created by Congress in the AMA system). To an extent we do that; although we recognize that we don't answer all of the questions the parties would like us to deal with, we do resolve the threshold question and find that *Rice* remains viable in AMA but that the different choices created by AMA for seeking review of adverse decisions can make dealing with TDIU more complicated.

Our task is made more difficult because we face a unique set of events—Mr. Phillips has multiple claim streams at different levels of the appeals process, all appearing to stem from different applications and therefore different potential effective dates. With this myriad of claims, the question before us is whether the Board erred when it fixed the effective date of his TDIU award (April 7, 2020) based on the date that Mr. Phillips filed an application for increased compensation based on unemployability.[2] As we explain, we find that the Board did not err.

To get there, we reaffirm the central holding of *Rice:* TDIU is not a separate claim, it is a rating option available whenever a claimant attempts to get service connection or a higher rating from VA and the record includes evidence of unemployability. *Rice*, 22 Vet.App at 453–54. Here, TDIU came before the Board as part of Mr. Phillip's April 2021 increased rating claim. Although the issue of TDIU was also part of other claims before VA—and it remains a possible rating when VA rates those claims—those claims were not before the Board. Thus, when the Board dealt with the issue of Mr. Phillip's rating for the period covered by the April 2021 claim, it correctly considered whether he was entitled to TDIU for that period, including by awarding TDIU up to a year before he filed his increased rating claim. And so, we affirm.[3]

## I. BACKGROUND

Mr. Phillips served honorably on active duty in the U.S. Army from July 1966 to July 1968, including service in Vietnam. R. at 7248. His case is plagued by complexity and delay. We focus

---

[2] As we discuss in great detail, the April 2021 submission plays a pivotal role in this appeal. We often refer to this submission as an application, given that it was submitted on a form that, as we note in the text, is an application for increased compensation based on TDIU. Recognizing that a request for TDIU, whether express or implied, reflects a claimant's desire for increased disability compensation, we sometimes refer to the April 2021 submission as an increased rating claim. Unless the context reflects otherwise, we use the terms interchangeably.

[3] On February 14, 2024, we stayed this case pending the Court's resolution of *Jackson v. McDonough*; that case has now issued, and so the stay has been automatically lifted. *See Jackson v. McDonough,*__Vet.App__, 2024 WL 3108354 (June 25, 2024).

only on those facts and claims necessary to our decision. Mr. Phillips is service connected for several conditions, including multiple skin conditions and PTSD. Although these claims were only recently granted, the effective date for the earliest one goes back to 2002, and that claim stream is still live before VA.

At one time, Mr. Phillips's skin conditions were broken down into two streams. But, while this appeal has been here, they have both been merged into one rating. The first stream led to a Board grant of service connection in April 2018 for onychomycosis of the feet, dyshidrotic eczema, and acne vulgaris. R. at 6949-61. In that same decision, the Board remanded Mr. Phillip's claim for service connection for a psychiatric disability. *Id*. The RO implemented the skin condition grant in May 2018 and assigned a noncompensable rating effective August 28, 2002, and a 10% rating effective November 18, 2016. R. at 6077-80. Mr. Phillips appealed the rating.

In a July 25, 2023, decision the Board granted the second skin condition stream described as a skin rash disability, including epidermal cysts, carbuncles, and tinea pedis. Appellant's December 20, 2024, *Solze* Notice at Exhibit 1. Both streams of skin claims have been pending before VA at one level or another since at least 2002. And VA has now granted a unified 60% rating for the skin disability going back to 2002 as well as schedular TDIU back to 2009. *Id*. at Exhibit B.

Besides the skin claims, we also have a psychiatric disability claim. After a similarly long claim history, the RO granted service connection for this claim, described as PTSD, in May 2020 and awarded a 70% rating effective November 25, 2009; this grant roped in depression and anxiety. R. at 4050-72. In the same decision, the RO denied service connection for a rash on the veteran's head, ears, arms, legs, and groin area. R. at 4067-71. In August 2020, Mr. Phillips filed a Notice of Disagreement (NOD) as to the RO's service-connection denials. R. at 3720-28. But he did not appeal the effective date or the assigned rating for his psychiatric disability. *Id*.

As best we can tell, at one time or another the various skin claims and PTSD have all been before the Board as service-connection claims in one stream. But once his PTSD claim was granted, Mr. Phillips stopped pursuing that claim. And his skin rating claims led to separate Board remands that eventually led to those decisions described in the *Solze* notices.

The claim before us stems from Mr. Phillips's submission of an April 2021, VA Form 21-8940, Application for Increased Compensation Based on Unemployability. R. at 1264-67. In it, Mr. Phillips wrote that his PTSD and skin conditions prevented him from securing or following

3

any substantially gainful employment. R. at 1264. He reported that he had last worked full-time in February 1978, and that his skin rash prevented him from working any longer. R. at 1265. In addition to its facial focus on TDIU, VA also interpreted this April 2021 submission as one seeking a higher schedular disability rating for the appellant's PTSD.

This application led to a January 2022 RO decision that granted a 100% rating for PTSD, effective April 7, 2021. R. at 99-102. The RO continued Mr. Phillips's then 10% skin rating (remember, VA has upped it to 60% since) and concluded that entitlement to TDIU was moot because Mr. Phillips's disabilities were evaluated as 100% disabling and no potential entitlement to an earlier effective date for TDIU was warranted based on the record. R. at 101-02. Mr. Phillips filed an NOD electing to go to the Board, bringing us to the Board decision on appeal. R. at 65-83. He identified only the issues concerning TDIU and PTSD as the matters he wished to appeal. R. at 65.

In the April 2022 decision on appeal, the Board addressed the January 2022 RO decision. The Board granted TDIU and assigned an effective date of April 7, 2020. The Board explained that, because Mr. Phillips filed his VA Form 21-8940 on April 7, 2021, he could receive an effective date for TDIU as early as April 7, 2020, one year before he applied for TDIU under 38 C.F.R. § 3.400(o). R. at 11-12. From here Mr. Phillips appealed to this Court.

While his appeal has been pending here, VA continued to act on his skin claims. As we noted above, in a July 2023 decision, VA has set Mr. Phillips's skin rating at 60% going back to 2002 and awarded him TDIU back to 2009. This matters for purposes of the appeal before us because, based on the April 2022 Board decision, Mr. Phillips only had TDIU going back to April 2021. But he now has TDIU back to 2009. As we explain, this doesn't moot his appeal here, but it does narrow the scope of the issues we have to deal with.

## II. ANALYSIS

### A. The Parties' Arguments

Because of the procedural posture here—initial briefing, post-decisional motions, further briefing, and oral argument—we think it best to condense the parties' arguments to their essence. Mr. Phillips argues that the Board erred because it ignored TDIU (1) going back to 2009 on a schedular basis—the effective date of his PTSD claim and 70% rating; and (2) back to 2002 on an extraschedular basis—the effective date of his skin claim. He believes that his TDIU claim stream

4

arose as part of his earlier PTSD claim and as part of his skin claims. Thus, he reasons that the effective date for TDIU should go back to 2009 on a schedular basis and to 2002 on an extraschedular basis.

For his part, the Secretary argues that Mr. Phillips's claim before the Board stemmed from his April 2021 application and thus the Board correctly assigned the effective date back to April 2020. In response to our memorandum decision, the Secretary also pressed the point that *Rice* had been left behind by the changes enacted by Congress for AMA. As he sees it, because AMA has specific paths for review, and those paths have their own record limitations and prohibitions on concurrent selection, AMA prevents a situation where the veteran's other claims—which were in higher level review—could also be before the Board at the same time.

Even whittled down to this summary, there are parts of the parties' arguments that have become irrelevant because of developments that happened while this appeal has been before this Court. Mr. Phillips now has schedular TDIU going back to 2009. That means we don't need to address those parts of his argument that focus on the PTSD claim as a path to an earlier effective date. This includes his argument that his April 2021 application was a supplemental claim for his PTSD claim. Even if Mr. Phillips were right, the most he would get on remand based on this line of attack is TDIU back to 2009. And he already has that.

This leaves us to decide whether the Board had to address TDIU going all the way back to 2002. Mr. Phillips based that argument on extraschedular consideration. This is because, at that time, he did not meet the schedular requirements for TDIU under 38 C.F.R. § 4.16—a single disability rated at 60% or a combination of disabilities adding up to 70%. But developments have changed what we're working with. VA has recently assigned Mr. Phillips a 60% rating for his skin disabilities back to 2002. This means he now meets the requirements for schedular TDIU. Thus, although Mr. Phillips wanted to be considered for extraschedular TDIU, that doesn't seem to be an option anymore.

Even so, we still have a live dispute before us. Before we get to that, we have to acknowledge that we've been dealing with facts from outside the record before the agency at the time the Board issued its April 2022 decision. Generally, we're prohibited from considering evidence that postdates a Board decision. *See Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021) (explaining that this Court may not use extra-record evidence to make new findings of

fact). But we're not using evidence outside the record here to make new findings of fact or to make substantive decisions about whether the Board erred.

Instead, we're looking at what has happened since the April 2022 Board decision to confirm that we still have a live case or controversy. *See Kernz v. McDonough*, 36 Vet.App. 372, 381 (2023), *appeal docketed*, No. 24-1171 (Fed. Cir. Nov. 21, 2023). We need to look at these developments to ensure that we have jurisdiction. And our inquiry here confirms that we do. True, the issues of TDIU going back to 2009 on a schedular basis and TDIU back to 2002 on an extraschedular basis are now moot, but that doesn't change that TDIU (now on a schedular basis) going back to 2002 remains an option. And, if Mr. Phillips is correct that the Board had to address TDIU before April 2020, he was harmed by the Board's failure to do so. In short, we have a live case and controversy, even if the scope of that controversy has narrowed. We thus turn our attention to deciding whether the Board erred by not adjudicating TDIU before April 2021.

### B. What is TDIU?

We start by considering the principles governing TDIU. To do that, we have to take a step back to the function of the VA claims process. Congress told VA to pay compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. §§ 1110, 1131. To make this work, Congress also had VA "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." 38 U.S.C. § 1155. Under the statute, this schedule was to "provide ten grades of disability and no more, upon which payments of compensation shall be based, namely, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, and total, 100 percent." *Id*.

As ordered, VA created the schedule for rating disabilities in Part 4 of Title 38. The resulting "rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2024). The assigned "percentage ratings represent . . . the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." *Id*. And "[t]he basis of disability evaluations is the ability . . . to function under the ordinary conditions of daily life including employment." 38 C.F.R. § 4.10 (2024). This means that, whatever the affected body part or system, "evaluations are based upon lack of usefulness, of these parts or systems, especially in self-support." *Id*. And VA then combines the evaluations for each disability

6

to create a combined rating it uses to pay compensation. *See* 38 C.F.R. § 4.25 (2024). But having disabilities that add up to 100% is not the only way to attain a total rating.

This is where TDIU comes in. As part of its rating schedule, VA created § 4.16. This regulation reflects "the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(b) (2024). VA will rate the veteran as totally disabled if that veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and either has a single service-connected disability rated at 60% or more, or multiple service-connected disabilities with a combined rating of 70% or more with at least one disability rated at 40%. 38 C.F.R. § 4.16(a). This is commonly known as a schedular TDIU.

But, even if the veteran doesn't meet those schedular requirements, a total rating is still possible under § 4.16(b). This is called extraschedular TDIU. But this route to TDIU requires that the case go "to the Director, Compensation Service, for extra-schedular consideration" and this should happen for "all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards" from § 4.16(a). 38 C.F.R. § 4.16(b). In any case, TDIU is a way for veterans who don't have a 100% disability rating to still be rated at that total, 100% level. And so, we know when VA must award TDIU, but when does VA have to consider it?

### C. When does VA have to Consider TDIU?

To answer that question, we must turn to caselaw. The Federal Circuit has held that "'regardless of whether a claim is specifically labeled as a claim for TDIU,' the VA is obligated to 'determine all potential claims raised by the evidence.'" *Comer v. Peake,* 552 F.3d 1362, 1367 (Fed. Cir. 2009) (quoting *Roberson v. Principi,* 251 F.3d 1378, 1384 (Fed. Cir. 2001)) And so "VA must consider whether a TDIU award is warranted 'whenever a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability.'" *Id.* (quoting *Roberson,* 251 F.3d at 1384).

This dovetails with our own caselaw and brings us back to *Rice*. In *Rice* we spoke at length of what constitutes a claim and then explained that "as its very title indicates, a finding that an individual is entitled to TDIU . . . merely means that the veteran has met certain qualifications entitling him to a 'total disability' rating; in other words, a disability rating of 100%." *Rice*, 22

Vet.App. at 452. Rather than have TDIU as its own diagnostic code "in the rating schedule, VA has provided for this means of achieving a total disability rating in a separate regulation because it potentially applies to all disabilities, or, in some cases, combinations of those disabilities." *Id*. Thus, we held that "TDIU . . . is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or . . . as part of a claim for increased compensation." *Id*. at 453–54.

This makes sense. TDIU is in Part 4 of title 38—the "Schedule for Rating Disabilities." It is something that gets the veteran up to that 100% rating. And it is a way for "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities [to] be *rated* totally disabled." 38 C.F.R. § 4.16(b) (emphasis added). Thus, as we and the Federal Circuit have explained, it is not a separate claim but an attempt to be rated correctly for a disability. *Rice*, 22 Vet.App. at 452; *see also Comer,* 552 F.3d at 1367. And the issue of TDIU can arise as part of an initial claim or as an attempt to get a higher rating—whenever VA gets evidence of unemployability. *Rice*, 22 Vet.App. at 453.

We have also explained that "[t]he distinction between the two [an increased rating and an initial claim] is important for purposes of assigning an effective date for an award of compensation." *Id*. at 454. This is because "[d]ifferent statutory and regulatory provisions apply depending on whether the claim is an original claim or one for increased compensation." *Id*. And effective dates, just as at the time of *Rice*, are governed by 38 U.S.C. § 5110 and 38 C.F.R. § 3.400; these essentially tie the effective date for an initial rating claim to the latter of the date of claim or when entitlement arose. But for an increased rating claim, the effective date can go back a year before the date of the claim if it is ascertainable that the increase occurred within that year. 38 C.F.R. § 3.400(o)(2)(2024).

We should also add that, because TDIU is not a separate claim, VA granting or denying TDIU for part of a claim stream or in a separate claim stream doesn't absolve VA of the responsibility to consider TDIU as part of another stream or for the entire period on appeal. Thus, in *Harper v. Wilkie*, we held that, even though the RO had granted TDIU, the Board erred when it failed to consider TDIU for the entire period on appeal. 30 Vet.App. 356, 360 (2018). The grant of TDIU for part of a claim doesn't absolve VA of the responsibility to consider TDIU when it is deciding the appropriate rating for the veteran's disability during a different period. *See id*.

8

This means that if the RO grants or denies TDIU as part of one increased rating claim, VA may still need to consider TDIU in a separate appeal of a different rating if the veteran doesn't already have the maximum benefit. *See Morgan v. Wilkie*, 31 Vet.App. 162, 167 (2019) (reviewing VA's duty to maximize benefits and the presumption that veterans are seeking the maximum benefit allowed). Depending on the applicable record, that consideration may be brief. For example, if the record is essentially the same, there likely isn't much VA needs to say beyond explaining that TDIU remains denied. But if the record is different, then as part of deciding the veteran's rating, VA will need to explain whether the veteran qualifies for TDIU even if a different decision denied that rating at a different time. After all, VA wouldn't deny the veteran a 100% rating for PTSD just because the veteran had once been denied a 100% rating for his spine. Like other potential ratings, TDIU is just a mechanism to maximize benefits and rate the veteran correctly.

Where does that leave us? From this, we see that TDIU is not a separate claim. It is one way to get the appropriate rating for a disability. If a veteran applies for service connection and VA learns the veteran can't work, it must consider TDIU when assigning the appropriate rating. And, when a veteran already has service connection for a disability and applies for a higher rating, then VA needs to consider TDIU when it receives evidence of unemployability. To be clear, this doesn't mean that VA only considers that specific disability for TDIU. The TDIU regulation is not limited to considering the single disability on appeal but it requires VA to decide whether the veteran is "unable to secure or follow a substantially gainful occupation as a result of [his or her] service-connected *disabilities*." 38 C.F.R. § 4.16(a).

In the end, our chief point is that TDIU can be raised at various stages of the claims process and becomes vital when VA rates a disability. And, because TDIU can come up basically any time VA is rating a disability, VA may need to address it as part of separate claim streams when it is rating different disabilities. Put another way, TDIU is not its own separate benefit that VA can grant or deny unmoored from the underlying service-connection claim or rating. *See Harper*, 30 Vet.App. at 360; *see also Rice*, 22 Vet.App. at 454. Instead, TDIU is part of that underlying claim—as an option for a potential rating—and the eventual effective date depends on the specific claim VA is then adjudicating. *See Rice*, 22 Vet.App. at 454.

### D. Did the Board Get It Right?

What does all this mean for Mr. Phillips? The parties agree that TDIU was part of Mr. Phillips's rating on appeal (plus the Board favorably found as much). When he submitted his April 2021 TDIU application, VA found that this application raised the possibility of an increased schedular rating for PTSD. Mr. Phillips's skin rating was already pending before VA. In response to the application, VA then decided the rating for his PTSD and skin disabilities. VA kept his skin rating the same. And for the period starting in April 2021—the date of his application—VA increased his PTSD rating from 70% to 100%. VA also denied TDIU (as moot) and left in place his 70% PTSD rating before April 2021. Unsatisfied with the fact that his total rating did not stretch back before April 2021, Mr. Phillips brought his case to the Board. And the Board correctly recognized that he could be rated as totally disabled with a TDIU rating back to April 2020—a year before he filed his TDIU application.

So far so good. Mr. Phillips doesn't challenge the denial of a 100% schedular rating and has no problem with his TDIU award for the period from April 2020 to April 2021. And for what it's worth, the Secretary hasn't argued the Board erred either.

The parties also seem to agree that TDIU was part of Mr. Phillips's 2002 skin claim. After all, that claim has been pending before VA since 2002 and VA learned during that claim that Mr. Phillips had difficulties working for years due to his skin condition. A straightforward application of *Rice* tells us that TDIU is part of this claim. *See Rice*, 22 Vet.App. at 454. And this serves as a solid example of how TDIU can be part of multiple claims.

Where the parties part ways is on whether the Board could go back to that 2002 claim when it was deciding TDIU in the decision on appeal; they disagree about whether the issue of TDIU before the Board was controlled by the 2021 or the 2002 application. On this point, we agree with the Secretary that the appeal before the Board stemmed from the April 2021 application. R. at 1264-67. That application sought a higher rating, including based on unemployability. *Id.* And TDIU was a potential rating for Mr. Phillips's disabilities. *See Rice*, 22 Vet.App. at 453-54. When his case made it to the Board, the Board rated him as totally disabled back to April 2020—the correct effective date based on his April 2021 date of claim. R. at 11-12.

That Mr. Phillips could also receive a total rating as part of his other pending claims did not mean that the Board could rope in those separately pending claims when adjudicating the increased rating claim on appeal in April 2022. To be sure, if TDIU were its own standalone claim,

then the Board would have had to look at when that TDIU claim was first raised to assign the effective date. But *Rice* tells us that TDIU is not a separate claim. *Rice*, 22 Vet.App. at 453-54. And *Rice* also tells us that the potential effective date for TDIU will depend on the date of the underlying claim for service connection or increase. *Id*. Here that was April 2021. That is because after VA adjudicated his increased rating claims—for both his skin condition and PTSD, including on the basis of TDIU—Mr. Phillips only appealed PTSD and TDIU to the Board, not his skin condition. Thus, the Board correctly looked at § 3.400 to see if it could go back up to 1 year before the date of the claim and favorably found that it could.

What Mr. Phillips appears to want is for TDIU to be its own unique "super claim." Not a standalone claim when raising the issue, but its own solo claim when figuring out effective dates. The problem is, that's simply not what TDIU is. TDIU is a potential rating for the veteran's disability. If you don't qualify for a 100% rating but you can't work, TDIU may be an option. Thus, the Board needed to, and did, consider TDIU when it rated Mr. Phillips's disabilities. But when the case got to the Board, there was no separate standalone TDIU claim with its own effective date going back to 2002.

Instead, TDIU was an issue that was reasonably raised as part of Mr. Phillips 2002, 2009, and 2021 claims. *See Rice*, 22 Vet.App. at 453-54. And VA needed to consider whether he qualifies for TDIU when it assigns him a rating as part of those claims. The Board did so here (and it did so correctly) when it resolved his April 2021 claim. R. at 11-12. As the first *Solze* notice tells us, VA also addressed TDIU (again, favorably) when it dealt with his skin rating back to 2009. December 20, 2023, *Solze* Notice at Ex. B. And whether he can receive TDIU back to 2002 remains live before the agency as part of his skin rating appeal. True, these last two facts don't play a role in our substantive review—we're generally not allowed to consider matters outside the record. But it is at least reassuring that we can see VA correctly dealing with the issue. (We are less reassured when it comes to how long it has taken to get to these correct ratings.)

That Mr. Phillips put TDIU in play as part of his other claims but did not receive a decision resolving TDIU for all of them at the same time is a product of the choices built into the AMA system. This choice is a feature, not a bug, of the system. "Central to the AMA's many reforms, claimants may now choose from three procedural lanes to obtain review of their claim within one year of the initial decision (in contrast to the legacy system's single pathway for appeal to the Board)." *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs*., 7 F.4th 1110, 1119 (Fed. Cir. 2021).

11

When a veteran first receives an unfavorable decision from VA, he or she can pick higher level review, a supplemental claim, or to go directly to the Board. *Id.* And at the Board there are three more choices. *Id.* As this case shows, these choices can have a big impact on a case, particularly TDIU effective dates. Using the various options to add evidence, develop the record, or go for speed can help veterans decide how to best take charge of their claims. But those choices can also carry inefficiencies or even disappointment when issues end up split between different levels (or simply not pursued at all).

Let's put aside the different lanes created by AMA and go back to the "simpler" legacy world to consider if Mr. Phillip's case would have turned out differently. Same as now, he submits his application in April 2021. VA then issues a decision addressing his PTSD and skin ratings. Without the options for claims to exist in different places at the same time, VA would have been dealing with the issue of his PTSD rating—based on the April 2021 claim—and his skin rating— which VA had been working on since 2002. Thus, TDIU back to 2002 would have been in play, at least when VA was deciding his skin rating. And odds are good that the Board would have erred by not considering 2002 as a potential effective date. But, to reiterate, Mr. Phillips made a choice not to appeal the skin rating issue to the Board.

We have to pause here to address our noncommittal language. At this point, we're addressing a hypothetical that does not control this case. So, it's safe to say we're in dicta territory. *See Mayfield v. McDonough*, 36 Vet.App. 251, 259 (2023) ("Dictum is language in an opinion that is unnecessary to the decision in a case and therefore nonbinding in future cases."). Even so, we think it important to stress that Mr. Phillips's claims history is very complicated, and we're hampered by not having the full record. Thus, we don't foreclose the possibility that even in legacy, VA may have had a valid reason for keeping different periods for Mr. Phillips's skin rating in adjudication at separate levels. In that case, the result may have been the same—if the only claims before the Board were based on the April 2021 application, the effective date would be the same.

What's more, had Mr. Phillips in the legacy context been so explicit in limiting the issue he was taking to the Board—that is, had he only expressly appealed his lack of a total rating *before* April 2020 with a focus on PTSD—we would likely have the same result. The skin issue would not have been before the Board and the Board would have been dealing with TDIU related to the PTSD rating and the effective date would have been based on the April 2021 date of claim. But in practice, appeals to the Board were rarely so limited. Without the different appellate options, there

12

was little benefit to such specificity. Thus, in legacy, the Board would likely have been dealing with a TDIU rating that could have stretched all the way back to 2002.[4]

In the end, that is not the case we have here. We're dealing with the AMA world. In this world, Mr. Phillips's claims stemmed from his April 2021 application. By his own choice, the only disability he brought to the Board was his request for a higher rating for PTSD before April 2021 when he filed an NOD seeking to appeal his PTSD rating effective date and TDIU but not his skin rating. The potential effective date for that increased rating was controlled by his April 2021 application. And one option for that higher rating—and it's the option he ultimately won with— was TDIU. Thus, the potential effective date for TDIU was also controlled by his April 2021 claim. *See* 38 C.F.R. § 3.400(o)(2). And so, we hold that the Board did not err when it assigned TDIU based on the veteran's April 2021 application, even as the issue of TDIU remains as part of other claims not before the Board. In short, we affirm.

### III. CONCLUSION

Based on the above, the April 1, 2022, Board decision that denied entitlement to TDIU before April 7, 2020, is AFFIRMED. The appeal is otherwise DISMISSED.

BARTLEY, *Chief Judge*, dissenting: The majority addresses entirely new ground in explaining how to arrive at Mr. Phillips's proper TDIU effective date under the AMA. That is as expected, but the decision's undermining of TDIU's most significant features and its vagueness and inconsistency threaten to confuse adjudicators and veterans and adversely affect TDIU adjudications generally. Additionally, the majority's take on TDIU post-AMA would require veterans to appeal rating decisions they actually agree with to protect their earliest effective date for TDIU, clogging an already overstretched VA claims process and harming veterans who may not know to file protective appeals. Therefore, I respectfully dissent.

---

[4] Although this case shows that, as in legacy, TDIU may be part of different claim streams, we don't foreclose that how the AMA limits the record on appeal could have some impact on how VA decides TDIU in future cases— such as if evidence of unemployability came in after the evidence window closed. We don't decide the issue at all. Here, the parties don't dispute that TDIU was part of the appeal. So how record limitations can impact raising TDIU, or how VA should treat the matter when TDIU is an option within multiple claim streams at different levels of the agency, are problems we don't need to deal with today.

The majority sets out the facts of Mr. Phillips's case and then poses the panel question at issue: whether the Court should adopt the veteran's view that the Board had an obligation to consider a TDIU effective date further back than 1 year prior to his April 2021 formal TDIU application, since his skin condition claim has been pending since 2002 and his April 2021 TDIU application clearly indicated that both PTSD and skin conditions prevent employability, *ante* at 3-4; *see* R. at 1264, or whether the Court should adopt the Secretary's view that "because AMA has specific paths for review, and those paths have their own record limitations and prohibitions on concurrent selection, AMA prevents a situation where the veteran's other claims [(essentially, Mr. Phillips's skin condition evaluation claim)]—which were in higher level review—could also be before the Board at the same time," *ante* at 5. The majority adopts the Secretary's view, *ante* at 12, hinging their decision on the fact that Mr. Phillips chose different lanes for his PTSD and skin condition evaluations, *ante* at 11-12, and their apparent belief that TDIU doesn't require VA to consider all of a veteran's service-connected conditions, *ante* at 2, 11.[5] This decision promises a rough road ahead for veterans seeking their earliest effective date for TDIU under the AMA.

Underpinning the majority's analysis is an application of *Rice* that, while plausible from the specific language cited, is inconsistent with its intent. *Rice* held that an assertion of unemployability within 1 year of a decision that grants service connection and assigns an initial evaluation abates that decision's finality, potentially affording veterans entitlement to TDIU as part of their initial award of benefits. *Rice v. Shinseki*, 22 Vet.App. 447, 454-55 (2009). In other words, a veteran's potential earliest effective date for TDIU was the date of the claim for service connection, *id.* at 453, and not, as VA believed prior to *Rice*, limited to 1 year before the veteran submitted the TDIU application. The Court's holding was to *expand* VA's prior understanding of TDIU as only being raised when the formal TDIU application was filed—and it was corrective of VA's then-prevalent view that TDIU was unable to be raised by the evidence of record when a veteran filed a claim for service connection.

But the majority here applies *Rice* under the AMA in a way that turns TDIU into an ordinary individual increased evaluation claim and fails to reckon with TDIU's unique characteristics under the governing regulation, 38 C.F.R. § 4.16. In so doing, the majority *limits* a

---

[5] Mr. Phillips didn't appeal the May 2020 initial assignment of a 70% PTSD evaluation, *ante* at 3, presumably because he agreed that that evaluation was proper. But under the majority's approach, even though TDIU is potentially pending back to 2002, he evidently should have appealed the evaluation that he agreed with. He is simply fortunate that the RO on its own reevaluated entitlement to TDIU when it granted additional compensation for his skin disability.

claimant's potential recovery and sanctions a claim prosecution view for TDIU that gives outsize impact to a claimant's inexpert medical and vocational decision about which service-connected disability or disabilities are causing or contributing to unemployability, which evaluation decision to appeal, and which lane to choose. Thus, since no veteran can prognosticate which of several service-connected disabilities may become central to a future TDIU effective date determination, and to protect entitlement to TDIU at the earliest effective date, informed veterans will have to appeal each and every initial evaluation and increased evaluation decision received, as to each and every service-connected disability, always choosing the same lane and trying to keep disability evaluation issues together, and continuing to appeal even though they may *agree* with some evaluation decisions.[6]

The majority acknowledges that this departs from what was required of claimants under the legacy system, *ante* at 12, but characterizes this confounding situation as a "feature" of the AMA system, *ante* at 11. But let's be clear: this result is contrary to the Court's intent in *Rice* and to Congressional intent in creating the AMA system to streamline an already burdened system while maintaining a paternalistic process designed to maximize veterans benefits. *See Edwards v. McDonough*, 36 Vet.App. 56, 63 (2023) (noting that "VA reiterated its commitment to veteran-friendly principles when it finalized the language of the AMA," expressly stating that "it 'takes seriously its obligation to administer its [AMA] process in a claimant-friendly way'" (quoting VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 139 (Jan. 18, 2019) (final rule))).

And the majority fails to support its conclusion that the availability of additional appeal options under the AMA removes from VA its responsibility, borne out by decisions such as *Rice*, to fully adjudicate TDIU whenever raised. *Ante* at 11 (essentially attributing hypothetical unfavorable future effective date outcomes, or "disappointment," to the inexpert veteran's review choices); *see Rice*, 22 Vet.App. at 454 (holding that "if VA incorrectly describes evidence of TDIU as a new claim for increase, rather than as part of a pending claim," it will deprive the veteran of an accurate effective date determination). In other words, the majority does not explain how or why AMA, a process and procedure change, would result in such dramatic *substantive* entitlement

---

[6] In fact, to protect their potential TDIU entitlement and proper effective date, veterans will have to continue to appeal legally non-viable claims. For example, Mr. Phillips has been awarded the highest possible schedular evaluation under the law, 60%, for dermatitis. Appellant's December 20, 2023, *Solze* Notice at Exhibit B. Under the majority's analysis, he would have to continue his appeal seeking an increased evaluation for his skin disability to preserve his potential 2002 TDIU effective date.

15

changes when there has been no change to the entitlement requirements of 38 C.F.R. § 4.16, the TDIU regulation.

Furthermore, as noted, the majority's analysis is at best murky concerning the fundamental principle that, once TDIU is raised, a resultant TDIU determination is based on all of the veteran's service-connected conditions. *See Brambley v. Principi*, 17 Vet.App. 20, 24 (2003) (holding that TDIU adjudications require a complete picture of the appellant's service-connected disabilities and their effect on employability). The majority's glancing acknowledgement that § 4.16 requires consideration of all service-connected disabilities, *ante* at 9, is undermined by its holding that "[a]lthough the issue of TDIU was also part of other claims before VA—and it remains a possible rating when VA rates those [other] claims—*those claims were not before [this] Board*," *ante* at 2 (emphasis added), *see also ante* at 11. The majority appears to believe that the TDIU effective date issue before the Board did not include the skin condition TDIU issue that has been pending since 2002 and that Mr. Phillips referenced in his April 2021 formal TDIU application. Thus, it isn't clear that adjudicators, much less veterans, will be able to accurately parse under what conditions TDIU is for consideration with respect to what disabilities. While the majority may be correct that TDIU is not a "super claim," *ante* at 11, that certainly doesn't empower them to set aside TDIU's foremost feature—that it is based on all service-connected disabilities—which is clearly prescribed by § 4.16.

Admittedly, the precedent set by the majority may be of lesser consequence for Mr. Phillips because his skin-TDIU claim stream dating back to 2002 remains pending below. *See ante* at 2. But the majority nonetheless uses his unique and complicated set of facts to establish a dramatic change of approach to TDIU under the AMA. This precedent will apply to unemployable veterans who had no warning that they should have appealed each and every initial and increased evaluation decision for every one of their service-connected conditions, irrespective of their agreement with those decisions. As noted earlier, these veterans most likely assumed that since § 4.16 remained untouched by the AMA, its process and procedure changes would not affect TDIU entitlement. Unfortunately, this decision tells these veterans that they were wrong. Five years after AMA's effective date veterans find out, with the issuance of this decision, that the rules of engagement regarding TDIU and TDIU effective dates have changed. And since protective appeals will be filed to preserve potential TDIU effective dates, even as to decisions veterans do not disagree with,

16

there likely will be more appeals for VA to process and an already overloaded system will be further burdened by claimants justifiably seeking to preserve their earliest TDIU effective date.

The majority has created tension between TDIU and the AMA process that need not exist when they could have taken steps within current TDIU and effective date caselaw, and AMA procedures, that would not disadvantage claimants. Mr. Phillips asked this Court to direct VA to reevaluate his TDIU effective date based on his expressly raised arguments below that he was potentially entitled to a 2002 TDIU effective date. At the very least, the majority should have remanded TDIU as inextricably intertwined with the skin increased-evaluation claim pending below. *See Begin v. Derwinski*, 3 Vet.App. 257, 258 (1992) (holding that a request for TDIU predicated on a particular service-connected condition is inextricably intertwined with an increase claim involving the same condition). And nothing prevented the Board in April 2022 from referring or remanding the matter for consideration with the then-pending skin disability claim. Such treatment of inextricably intertwined issues and theories of entitlement has long been accepted as fair and efficient. *See Holland v. Brown*, 6 Vet.App. 443, 447 (1994) (holding that the Board may adjudicate an increased evaluation claim while referring a related request for TDIU for further adjudication); *Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991) (holding that claims are inextricably intertwined where a decision on one issue could significantly impact another, rendering review by this Court meaningless and a waste of judicial resources).

And this Court has already held that remand is the appropriate action in these circumstances so as to avoid any potential preclusive effect of the Board's denial of an earlier TDIU effective date. *See Green v. McDonough*, 37 Vet.App. 127, 138 (2024). A remand in this case, consistent with *Green*, would benefit Mr. Phillips—and all similarly situated or less well-situated veterans— by securing the earliest possible TDIU effective date and maximizing benefits. The unique and uniquely protective VA claims system requires no less. But because with this decision the majority has elected to deprive claimants of potential TDIU benefits, I respectfully dissent.

17